UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Rajeeyah Wilson, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Smartfoods, Inc., *et al.*, <br><br> *Defendants*. | No. 24 CV 12814 <br><br> Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Rajeeyah Wilson, Stalin Javier Eusebio, and Nancy L. Patnude filed this putative class action against Defendants Smartfoods, Inc. and PepsiCo, Inc. (collectively "PepsiCo" or "Defendants"), alleging that two types of Smartfood popcorn are falsely and deceptively marketed. Defendants moved to dismiss the complaint in its entirety. [Dkt. 11.][1] For the reasons stated below, Defendants' motion is granted in part and denied in part.

**I.    Jurisdiction**

Plaintiffs invoke the Court's jurisdiction pursuant to the Class Action Fairness Act of 2005, alleging that the parties are minimally diverse, there are plausibly more than 100 putative class members, and the amount in controversy plausibly exceeds $5,000,000. [Dkt. 1 ¶ 12.] Consequently, the CAFA requirements are met. *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022).

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. The Court takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up).

Claims that sound in fraud and deception, like Plaintiffs', must meet the heightened Rule 9(b) pleading standard. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). To that end, Plaintiffs must plead "the 'who, what, when, where, and how' of the alleged deception." *Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at *6 (N.D. Ill. Aug. 31, 2023) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)); *see also Squeo v. Campbell Soup Co.*, 2024 WL 4557680, at *2 (N.D. Cal. Oct. 22, 2024).

## III. Background[2]

Defendants manufacture and label Smartfood popcorn. [Dkt. 1 ¶¶ 15–16.] Plaintiffs purchased Smartfood White Cheddar Popcorn in Illinois, New York, and

---

[2] The following factual allegations are taken from Plaintiffs' Complaint [dkt. 1] and are accepted as true for the purposes of the motion. *Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). In setting forth the facts at the pleading stage, the Court

2

California. [*Id.* ¶¶ 6–8.] The front of each bag of popcorn they purchased contained the phrases "No Artificial Flavors" and "No Artificial Preservatives." [*Id.*] Plaintiffs contend those representations are false and misleading because the product contains maltodextrin which is both an artificial flavor and artificial preservative. [*Id.*] They allege that if they knew the White Cheddar Popcorn contained maltodextrin they wouldn't have purchased it or would have paid substantially less for it. [*Id.*] The presence of artificial flavors or preservatives is material to consumers' purchasing decisions because products without artificial flavors and preservatives are seen as "premium." [*Id.* ¶ 33.]

Reasonable consumers like Plaintiffs understand "artificial" means "made by people." [*Id.* ¶ 31.] Maltodextrin is not found in nature; instead, it is created through a variety of synthetic processes including hydrolysis. [*Id.* ¶ 18.] To create maltodextrin, starch from corn, rice, potato, or wheat is cooked at a very high temperature and mixed with enzymes or acids until the chains of glucose molecules are broken down through polymerization. [*Id.* ¶¶ 19–20.] The acid method is most common for commercially produced maltodextrin. [*Id.* ¶ 23.] However, enzymatic hydrolysis can also produce artificial maltodextrin. [*Id.* n.7.] Either way, the result is a white colored, water-soluble powder that varies in sweetness depending on the degree of polymerization. [*Id.* ¶ 20.]

Maltodextrin can be used as a sugar substitute, imparting a sweet flavor to foods. [*Id.* ¶ 21.] It has been associated with spikes in blood sugar, gastrointestinal

---

does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

3

symptoms like cramping and bloating, and other intestinal disorders because it can increase the amount of harmful bacteria in the gut. [*Id.* ¶¶ 22, 32.] It's also been linked to cancer, Alzheimer's disease, kidney damage, reproductive difficulties, and allergies. [*Id.*]

In addition to being a sweetener, maltodextrin acts as a preservative by reducing water activity. [*Id.* ¶ 25.] It inhibits the growth of microorganisms and extends the shelf-life of processed foods by slowing or preventing the formation of bacteria, mold, yeast, and fungus. [*Id.*] Reasonable consumers like Plaintiffs understand "preservative" to mean "a chemical used to stop food from decaying." [*Id.* ¶ 34.]

Maltodextrin is an artificial preservative in Smartfood, regardless of Defendants' intention in using it. [*Id.* ¶ 26.] On information and belief, Defendants employ chemists to formulate Smartfood popcorn and, on that basis, knew or should have known maltodextrin is both a chemical preservative and flavoring agent. [*Id.* ¶ 40.] Because Defendants are responsible for manufacturing and labeling the White Cheddar Popcorn, they knew or should have known that using the phrases "No Artificial Preservatives" and "No Artificial Flavors" is deceptive. [*Id.* ¶ 39.]

## IV. Analysis

In their putative class action, Plaintiffs assert claims for (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1, *et seq.*), (2) violation of New York General Business Law § 349 (deceptive acts), (3) violation of New York General Business Law § 350 (false advertising), (4) violations

4

of breach of express warranty (N.Y. U.C.C. § 2-313), (5) violation of California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq*.); (6) violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq*.), (7) violation of California's Unfair Competition Law (Cal. Bus. Prof. Code § 17200); and (8) breach of express warranty (Cal. Com. Code § 2313), (9) breach of implied warranty (Cal. Com. Code § 2314), and (10) unjust enrichment. [*Id.* ¶¶ 53–139.] Plaintiffs seek, among other things, statutory and punitive damages, disgorgement of profits, and declaratory judgment. [*Id.* at 30.]³ PepsiCo moved to dismiss their complaint in its entirety under Federal Rules of Civil Procedure 12(b)(6). [Dkt. 11.]

### A.   Standing

Because Article III standing is a necessary component of federal jurisdiction, the Court addresses it first. *See Kithongo v. Garland*, 33 F.4th 451, 454 (7th Cir. 2022) ("The 'first and fundamental question' our court must answer 'is that of jurisdiction.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))). The doctrine of "standing is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). It requires that the plaintiff demonstrate that he has a "personal stake in the case" sufficient to justify the exercise of federal judicial power. *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021).

---

³   Plaintiffs' complaint included a request for injunctive relief but after PepsiCo challenged that on standing grounds, [dkt. 12 at 20], they withdrew their request, [dkt. 18 at 8 n.1]. Consequently, the Court does not consider either Plaintiffs' claim for injunctive relief or PepsiCo's corresponding Rule 12(b)(1) challenge.

Plaintiffs' claims concern both Smartfood White Cheddar Popcorn and Smartfood Movie Theater Butter Popcorn, but none of the Plaintiffs purchased the Movie Theater Butter Popcorn. [Dkt. 1 ¶¶ 6–8.] Each Plaintiff alleges they purchased the White Cheddar variety. [*Id.*] While neither party raises this issue, courts "have an independent obligation to … raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020).

Plaintiffs lack Article III standing to pursue claims related to products they did not purchase. *Raya v. Mead Johnson Nutrition Co.*, 2024 WL 4953687, at *4 (N.D. Ill. Dec. 2, 2024); *Gibson v. Albertsons Companies, Inc.*, 2024 WL 4514041, at *3 (N.D. Ill. Oct. 17, 2024); *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *4 (N.D. Ill. Sept. 22, 2016). Plaintiffs' only injuries relate to the White Cheddar variety. Consequently, there is "no case or controversy for the federal court to resolve" with respect to the Movie Theater Butter Popcorn. *TransUnion LLC*, 594 U.S. at 423. Those claims are dismissed without prejudice.

### B. Rule 12(b)(6)

#### 1. Consumer Protection Claims

To state a claim under any of the state consumer protection statutes, Plaintiffs must plausibly allege that PepsiCo's labeling is "likely to deceive reasonable consumers." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020). The issue at the motion to dismiss stage is whether Plaintiffs have alleged that maltodextrin is an artificial flavor and artificial preservative such that a reasonable

6

consumer would find the representations on Smartfood packaging false or misleading.

### a) Artificiality

PepsiCo argues that Plaintiffs failed to plausibly allege that maltodextrin is artificial. [Dkt. 12 at 12.] The cases PepsiCo cites like *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024), and *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021), assess the adequacy of allegations where plaintiffs allege that the offending ingredient can be derived through both artificial and natural means. Trouble arises where plaintiffs fail to connect the dots, alleging that the defendant used the artificial process to create the ingredient used in its product. There isn't a similar problem in this case. Plaintiffs allege that maltodextrin is created through hydrolysis via enzymes or acids. [Dkt. 1 ¶¶ 19, 24 & n.7.] Either method of production creates an artificial substance. [*Id.* ¶¶ 17–18, 24 n.7, 26.] *Valencia* and *Robie* are therefore minimally instructive.

Plaintiffs repeatedly contend that maltodextrin is synthetic, not found in nature, and created through industrial processes. [Dkt. 1 ¶¶ 6, 17–18.] Courts have found similar allegations sufficient. For example, in *Daly*, Plaintiff alleged that labeling protein bars as containing "no artificial sweeteners" was deceptive because they contained maltitol syrup, a synthetic and unnatural substance. 2023 WL 5647232, at *6–7. The Court explained that, because "[w]hether a label deceives a reasonable consumer is more often a question of fact than one of law," dismissal at the pleading stage is only warranted if the plaintiff's interpretation of the label is

7

unreasonable." *Id.* at *6. Plaintiff's interpretation of "no artificial sweeteners" was "not fanciful" because he plausibly alleged that synthetic sweeteners like maltitol syrup were unnatural and therefore artificial. *Id.* at 7. Consequently, the court denied the motion to dismiss on that basis. *Id.*

PepsiCo argues that because Plaintiffs admit maltodextrin is made from natural ingredients by using "water and enzymes," Plaintiffs have failed to allege that a reasonable consumer would believe the product is artificial. [Dkt. 12 at 13.] In essence, PepsiCo's argument seems to be that an ingredient cannot be artificial where it's made from a natural ingredient. But that is not a conclusion to be drawn at the pleading stage. Plaintiffs allege that maltodextrin is artificial despite being made from natural ingredients. [Dkt. 1 ¶¶ 17, 19.] They further allege that reasonable consumers believe artificial ingredients are "made by people" and detail how maltodextrin is produced, at the molecular level, through industrial processes. [*Id.* ¶¶ 19–20, 31.]

At this stage, it is not appropriate to challenge these factual assertions. Plaintiffs advocate for the reasonable inference that "the type and degree of processing must also be considered" when determining whether an ingredient derived from plants, like maltodextrin, is artificial. *Rice v. Nat'l Beverage Corp.*, 2019 WL 3037094, at *6 (N.D. Ill. July 11, 2019). Eventually, the evidence may show that the maltodextrin used in Smartfood is not artificial. But that issue cannot be resolved at the pleading stage of litigation.

### b) Maltodextrin as an artificial flavor

PepsiCo argues that in order for its labeling to be deceptive, Plaintiffs must allege that maltodextrin imparts Smartfood White Cheddar Popcorn's "characterizing flavor." [Dkt. 12 at 14–15.] It is not enough, according to PepsiCo, for Plaintiffs to allege that maltodextrin enhances, amplifies, or incidentally affects the popcorn's taste. [*Id.*]

This argument has its roots in preemption. FDA regulations provide that "if [a] product contains 'any artificial flavor which simulates, resembles or reinforces the characterizing flavor,'" the regulation requires that the product to be listed as "'artificial' or 'artificially flavored.'" *Allred v. Frito-Lay N. Am., Inc.*, 2018 WL 1185227, at *4 (S.D. Cal. Mar. 7, 2018) (quoting 21 C.F.R. § 101.22(i)(2)). Put another way, if the product contains an artificial ingredient that simulates the product's characterizing flavor, labeling the product as free from artificial flavors would run afoul of FDA regulations. However, "the FDA distinguishes between 'flavors' and 'flavor enhancers.'" *Id.* A flavor enhancer is a substance that supplements, enhances, or modifies "the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* If the artificial substance in question operates as a flavor enhancer, FDA regulations permit the product to be labeled as containing no artificial flavors.

Some courts slice and dice the difference between flavors and flavor enhancers at the motion to dismiss stage. For example, in *Ivie v. Kraft Foods Global, Inc.*, defendants' Crystal Light products were labeled "Natural Lemon Flavor" but

9

contained sodium citrate and potassium citrate. 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). After looking at the FDA's non-exhaustive list of artificial flavors, 21 C.F.R. § 172.515(b), which did not include the ingredients in question, the court concluded that plaintiff failed to plausibly allege that sodium citrate and potassium citrate functioned as a flavor as opposed to a flavor enhancer. *Id.*

Other courts, including the *Allred* court, charted the opposite course, holding that how an ingredient functions in a product is a question of fact. 2018 WL 1185227, at *5. There the court found that how malic acid functioned in defendant's salt and vinegar chips—whether as a flavor (imparting a vinegar taste) or as a flavor enhancer (amplifying the existing vinegar flavor)—was a factual determination inappropriate for resolution at the motion to dismiss stage. *Id.* at *5–6. The same was true in *Lozano v. Walmart*, which led the court to conclude that how an ingredient functions in a product, whether "as a flavoring agent [or] flavor enhancer," is a "factual issue [and] to the extent it is disputed, [it] is not properly resolved at the motion to dismiss stage." 2024 WL 412606, at *9 (C.D. Cal. Feb. 1, 2024).

While the court finds *Allred* and *Lozano* persuasive, in each of them the plaintiff's complaint specifically alleged that the ingredient acted as a flavor as opposed to flavor enhancer. For example, in *Lozano*, the plaintiff alleged that "by changing the ratios between sugars and acids, the malic acid" "create[d], simulate[d], and/or reinforce[d] the" characterizing flavor of the product. 2024 WL 412606, at *9. In *Allred*, the plaintiffs alleged that "malic acid simulate[d] the sour flavor of vinegar" in defendants' chips. 2018 WL 1185227, at *4. In other words, the plaintiffs described,

10

sufficiently for Rule 9(b) purposes, how malic acid functioned as a flavor in the product.

Plaintiffs' complaint alleges maltodextrin is an artificial flavoring agent and in general is capable of "impart[ing] a sweet flavor into a food product." [Dkt. 1 ¶¶ 21, 40.] But Plaintiffs do not allege how maltodextrin functions as a flavor in the White Cheddar Popcorn. While "how an ingredient is used in a product is not a question to be resolved at the pleading stage," *Daly*, 2023 WL 5647232, at *6, that does not excuse Plaintiffs' Rule 9(b) burden. They must explain why defendants' statement is false, part of which involves alleging how maltodextrin was used as a flavoring, not just as a flavor enhancer. *Lozano*, 2024 WL 412606, at *2. To sustain their "flavoring" claim, Plaintiffs must explain how maltodextrin creates, simulates, and/or reinforces the popcorn's white cheddar flavor. *Id.* at *9. They have not.

PepsiCo separately argues that "Plaintiffs' claims concerning artificial flavors are preempted because they fail to plausibly allege that maltodextrin functions as a flavor." [Dkt. 12 at 19.] The Nutrition Labeling and Education Act of 1990 prohibits state law requirements "not identical" to federal ones. *Bell*, 982 F.3d at 484. And, as explained, FDA regulations differentiate between products that are flavorings and flavor enhancers. *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at *7 (S.D. Cal. Mar. 7, 2019).

Whether Plaintiffs' claims are preempted and whether Plaintiffs have stated a consumer protection claim with respect to artificial flavoring are two sides of the same coin. Both depend on whether Plaintiffs can plausibly allege that maltodextrin

11

functions in Smartfood as a flavor, not merely a flavor enhancer. *Id.* If Plaintiffs are unable to plausibly allege that maltodextrin functions as a flavor, then their claims would be preempted because the FDA permits artificial flavor enhancers to be used in products that bear a label touting the lack of artificial flavors. *Id.* Plaintiffs cannot use state consumer protection laws to "tack on further required disclosures that the federal standard does not mention." *Bell*, 982 F.3d at 484.

On the other hand, if—consistent with their Rule 9 obligations—Plaintiffs are able to allege that maltodextrin functions in Smartfood as a flavor, it is not determinative that the FDA's list of artificial flavors does not include maltodextrin. As the *Allred* court recognized, the list is not exhaustive. 2018 WL 1185227, at *4. The upshot is that Plaintiffs are entitled to the opportunity to amend their complaint to meet both their Rule 9(b) obligations and avoid preemption with regard to their artificial flavor claims.

### c) Maltodextrin as a preservative

In a similar vein, PepsiCo argues that Plaintiffs failed to allege maltodextrin functioned as a preservative in the popcorn. [Dkt. 12 at 15–16.] It's not enough, according to PepsiCo, that maltodextrin *can* be a preservative; Plaintiffs must allege that PepsiCo used it in its White Cheddar Popcorn for a preservative purpose. [*Id.*] PepsiCo argues that FDA regulations do not identify maltodextrin as a preservative, and Plaintiffs' allegations are "unsubstantiated." [*Id.*]

The court in *Slowinski v. Drip Drop Hydration, Inc.* faced substantially similar allegations and found them sufficient. 2025 WL 524118, at *3 (N.D. Ill. Feb. 18, 2025).

12

There the plaintiff alleged the product, a powdered drink mix, disclaimed the presence of artificial preservatives but contained citric acid that functioned as a preservative. *Id.* The court reasoned that regardless of whether citric acid actually functioned as a preservative in the product, it was possible for the defendant's claim to be misleading. *Id.* As a result, the court denied the defendant's motion to dismiss. The *Squeo* court reached a similar conclusion. 2024 WL 4557680. Finding plaintiffs' allegations about the presence of citric acid and its preservative function were entitled to a presumption of truth at the motion to dismiss stage, the court rejected defendants' argument that what mattered is how they intended citric acid to function in the product. *Id.* at *6.

In this case, taking Plaintiffs' well-pleaded facts as true, they have sufficiently alleged that maltodextrin is an artificial preservative in Smartfood White Cheddar Popcorn. [Dkt. 1 ¶ 26.] Their complaint alleges, and cites articles supporting, that maltodextrin has preservative qualities and acts by reducing water activity and inhibiting the growth of microorganisms. [*Id.* ¶ 25.][4] They allege that maltodextrin acts as a preservative [*id.*], is an artificial preservative in the products [*id.* ¶ 26], and, regardless of PepsiCo's intent, using maltodextrin made the representation on the popcorn's packaging literally false [*id.*].

---

[4] PepsiCo argues that Plaintiffs' articles undermine their allegations that maltodextrin is a preservative. [Dkt. 19 at 15–16.] This argument is not well-taken. To offer just one example, an article, "Understanding Maltodextrin," cited at footnote 12 of Plaintiffs' complaint explains, numerous times, that Maltodextrin is commonly added to foods and beverages as a "filler, **preservative** or thickener." (emphasis added).

While Plaintiffs could have been slightly more precise and explicitly alleged that maltodextrin functions as a preservative in Smartfood White Cheddar Popcorn, viewed in a light most favorable to them, Plaintiffs have done enough to state a claim. As the *Slowinski* court explained, it may be that discovery shows maltodextrin did not actually function as a preservative in Smartfood. 2025 WL 524118, at *3. Discovery could also show that maltodextrin isn't a preservative at all. PepsiCo emphasizes that the FDA has yet to classify it as such. [Dkt. 12 at 16.] What matters though is whether "the relevant labels are likely to deceive reasonable consumers." *Bell*, 982 F.3d at 475. With respect to their artificial preservative claim, Plaintiffs have done enough to survive Defendants' motion to dismiss.

### 2. Common Law Claims

Plaintiffs also bring common law claims for breach of express and implied warranty under California and New York law and for unjust enrichment. While PepsiCo moves to dismiss these claims as well, the sum of its argument is that because Plaintiffs' consumer protection claims should be dismissed, so too should their common law claims. [Dkt. 12 at 18; dkt. 19 at 17.]

California and New York courts' analysis of express and implied warranty claims typically tracks their analysis of consumer protection claims. The inquiry is similar. For a breach of express warranty claim, "the plaintiff must allege the terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his or her injury." *Branca*, 2019 WL 1082562, at *10; *Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795, at *10 (S.D.N.Y. Feb. 7, 2023). "Any description of the

14

goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Branca*, 2019 WL 1082562, at *10 (citing Cal. Com. Code § 2313(a)(b)). In essence, the claim provides another avenue to challenge the same alleged misrepresentation on the Smartfood bag.

The same goes for the implied warranty claim under California law. The *Branca* court explained that misleading or inadequate labeling issues can be brought under an implied warranty claim. *Id.* at *11. Where the plaintiff claims that the defendant failed to disclose the presence of an allegedly artificial ingredient, it has stated a claim for breach of the implied warranty. *Id.* Because Plaintiffs adequately stated their consumer protection claims with respect to maltodextrin as an artificial preservative, their express and implied warranty claims can also proceed with respect to that theory of misrepresentation.

As for Plaintiffs' unjust enrichment claim, their theory is that PepsiCo obtained a benefit by misrepresenting its popcorn as free from artificial flavors and preservatives and was unjustly enriched by retaining the benefit. [Dkt. 1 ¶¶ 133–139.] While, under Illinois law, "unjust enrichment is an equitable principle … only available to litigants when other legal remedies are inadequate," it is too early to know whether Plaintiffs' unjust enrichment claims will ultimately be duplicative of other remedies. *Daly*, 2023 WL 5647232, at *8 (collecting cases). For the time being, Plaintiffs are free to pursue this claim in the alternative.

15

## V.     Conclusion

For the reasons stated above, PepsiCo's motion to dismiss [dkt. 11] is granted in part and denied in part. Plaintiffs' claims with respect to their artificial flavor theory are dismissed without prejudice as are all their claims related to the Movie Theater Butter Popcorn variety. PepsiCo's motion is otherwise denied.

Enter: 24-CV-12814
Date: May 5, 2025

_____
Lindsay C. Jenkins